## Case No. 5,193.

GALLAGHER et al. v. MURRAY et al.

CONDON v. SAME.

[10 Ben. 290.] [1]

District Court, S. D. New York. Feb., 1879.

H. Heath, for libellants.

J. Sherwood, for respondents.

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

CHOATE, District Judge. These are suits in personam for seamen's wages, brought against the defendants, the owners of the steamship Cleopatra.

The Cleopatra left New York October 17, 1878, bound on a voyage to Nassau, N. P., and thence to a port or ports in Cuba and thence back to New York. Just before reaching Nassau she struck upon a rock and was injured, and most of her cargo and passengers were forwarded by other vessels. She then proceeded to the port of Nassau, where she has ever since remained. The accident happened on the 23d of October, and she got into port about seven days later. The crew were kept by the ship till December 11th, discharging their ordinary duties, such as there were for them to do in port. Meanwhile a survey was called on the application of the master. It was composed of the captain of the port and the agent of American underwriters, and they called in to their assistance an engineer and a ship carpenter. They made a written report to the effect that one of the boilers was thrown out of place, the keel was injured, bolts started, and that the vessel was badly hogged, and unseaworthy; and recommended that, in consequence of her machinery being thoroughly disabled and of there being no facilities for repairing her there, she be condemned. Afterwards, on December 18th, the owners in New York wrote a letter of abandonment to the underwriters. The evidence now produced sustains the case found by the survey, and shows that she had suffered such injuries by reason of sea perils that she was wholly unfit to continue her voyage, and that she could not be repaired so as to complete her voyage. On the 11th of December the master, by direction of the owners, called the crew together, and informed them that they were discharged, and offered them a passage home to New York in another steamer of the same owners. Seventeen of them, being the libellants in the first of these suits, accepted the offer and came home in the other steamer. The other eight refused to come home; took the ground that the ship could continue the voyage or be brought home, and remained at Nassau till about the 25th of January. The master permitted them to sleep on board and he provided board for them at Nassau. The libellants in the first suit now demand wages up to the time of their arrival at New York on the 11th of December, with three months' extra pay, on the ground that they were discharged at Nassau with their consent, and that the vessel was neither wrecked, stranded nor condemned as unfit for service. They rely on Rev. St. § 4582, which provides that the three months' extra wages due to seamen so discharged, shall not be required "where vessels are wrecked or stranded or condemned as unfit for service," but shall in no other case be remitted. It is claimed that "condemned" here means condemned by decree of an ad-

miralty court. But considering the purpose of the statute, I cannot think the word was used in this restricted sense. Wreck, stranding or other fatal disability to the ship is recognized as discharging the contract between the ship and the seamen; but for the security of the seamen against possible imposition, it is required that where the case is not one of self-evident wreck or stranding, the proof of disability shall be shown by the condemnation of the vessel as unfit for service. The reference here is to that proceeding known in all ports, by which ships which have suffered disaster are condemned or pronounced unfit for service, the common method being by the report of a survey called by the consul of the nation to which the ship belongs, upon the application of the master. To give the words the restricted sense contended for by the libellants, would in many ports and places, make performance of the condition impossible. In this case there was such a condemnation, and the claim for three months' extra pay is disallowed. As the master kept the crew on duty till December 11th, they are clearly entitled to their wages till that time. Tarleton v. Mallory [Case No. 13,753]. These seamen further claim that their wages should be paid up to the time of their arrival in New York. For this claim there seems to be authority in the case of The Elizabeth, 2 Dod. 411. But I think this is a case where the service of the seamen was terminated by reason of the wreck or loss of the vessel, within the meaning of Rev. St. § 4526, and therefore they cannot claim their wages after the day of their discharge, December 11th. When the seamen were informed that their services would not further be required, they were told that they would be paid in New York on their arrival. When they arrived a dispute arose as to the amount due, the owners claiming that the wages were due only up to the 23d of October, and the seamen insisting on being paid up to the time of their return. Rev. St. § 4529, imposes on the owner a penalty of two days' extra pay for every day not exceeding ten during which the payment of wages is delayed beyond the period when by law it is payable, provided the delay be without sufficient cause. I cannot think that there was sufficient cause in this case for the delay in payment. The only question which could be looked upon as doubtful was whether the wages should cease on the 11th of December or on the 17th, and if this had been the only difference it may well be supposed that it could have easily been adjusted. But the owners having made a wholly unreasonable claim, and thereby kept the crew waiting for their wages, I think they are chargeable with the twenty days' extra pay.

As to the seamen who stayed in Nassau, nothing which the captain did in sheltering and feeding them can be construed as a revocation of the discharge, as is claimed by the libellants. It was an act of humanity, for which the ship owner should not suffer. As these men refused the discharge and the offer of return to New York and put the master and the owners to unnecessary expense, there is no reason why their wages should be paid beyond the 11th of December, when they were discharged in consequence of the voyage being hopelessly broken up.

Decree for libellants with costs and reference to compute the amount.